# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

v.                                                **Case No. 07-CR-87**

**BRENDA FATHALLA**
    **Defendant**

## DECISION AND ORDER

Defendant Brenda Fathalla, a Canadian citizen, seeks expungement of the conviction entered in this district on her guilty plea to conspiracy to distribute ecstasy. She complains that the conviction prevents her from entering the United States to work or visit family, and she faults her trial counsel for failing to advise her of these immigration consequences. See Padilla v. Kentucky, 130 S. Ct. 1473 (2010). She also notes that I did not consider deportation in imposing sentence.

I deny the motion. The record shows that counsel did address the immigration issue with defendant, and she knew she would be removed from the United States based on her conviction. Further, defendant fails to show that the employment and familial consequences of removal make her's one of those extraordinary cases in which expungement is appropriate; nor does she explain why, given the favorable probationary sentence she received based on her guilty plea, further consideration is warranted now.

## I. BACKGROUND

Defendant, a Canadian student attending college in the United States, agreed to drive a shipment of "party pills" from Ontario to Milwaukee, Wisconsin. Law enforcement, monitoring

the transaction with the help of a confidential informant, arrested defendant at the drop-off site, and the government charged her with conspiracy to distribute ecstasy, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 846. On January 22, 2008, she pleaded guilty pursuant to an agreement with the government and faced a guideline imprisonment range of 41-51 months. United States v. Fathalla, No. 07-CR-87, 2008 WL 4501057, at *1 (E.D. Wis. Sept. 29, 2008). At her September 26, 2008 sentencing hearing, I granted a 6-level departure on the government's U.S.S.G. § 5K1.1 motion, reducing the range to 21-27 months. Id. at *1-2. On review of the sentencing factors under 18 U.S.C. § 3553(a), I imposed a sentence of 3 years' probation with a condition of 180 days home confinement. Id. at *2-4. Neither side appealed.

On May 2, 2011, defendant filed the instant motion for expungement. In the motion, she indicates that as a result of her conviction she has been unable to obtain more than a basic level of employment and must rely on family outside of Canada for financial support. She further states that as a result of her plea she faces near certain removal if she enters the United States, where her family and fiancé reside. She indicates that while she could seek to withdraw her plea based on her lawyer's ineffective assistance under Padilla, she instead asks that the court grant expungement based on equitable considerations.

The government attaches to its response an affidavit from defendant's trial counsel, in which counsel avers that he advised defendant from the beginning that she faced deportation if convicted of the charge against her; their goal was to avoid prison. He further avers that he told defendant to consult an immigration attorney, and he attaches to his affidavit an e-mail from defendant in which she indicates that an immigration specialist advised her "that this felony conviction is a deportable one (aggrevated [sic] felony deportation.) Meaning, there is a good chance that I will be facing expediated [sic] deportation at the time I go for sentencing."

(R. 88-1 at 4.) Counsel indicates that based on defendant's immigration situation he sought – and the government and the court agreed – to adjourn the criminal proceedings so defendant could complete her education in the United States before she was deported to Canada. Defendant does not in her reply meaningfully dispute counsel's statements in this regard.

## II.  DISCUSSION

As the government notes, defendant's motion seems to merge various legal concepts, including expungement, collateral attack based on coram nobis or 28 U.S.C. § 2255, and sentencing equities under § 3553(a). However, because defendant is represented by counsel, I will analyze the motion as it is presented – a request for expungement.

### A.    Expungement Standard

The court may order expungement of judicial records "if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records." United States v. Janik, 10 F.3d 470, 472 (7th Cir. 1993); United States v. Fotouhi, No. 02-CR-38, 2002 U.S. Dist. LEXIS 14601, at *4 (E.D. Wis. July 11, 2002).[1]  Because expungement is an extraordinary remedy, however, the balance very rarely tips in favor of granting it. United States v. Flowers, 389 F.3d 737, 739 (7th Cir. 2004). The public interest in open proceedings, which are essential to a democratic society, is always strong, and records relating to a person's criminal conduct are vital tools to law enforcement. Id.  In order to outweigh the public interest, the unwarranted adverse consequences faced by the defendant must be truly extraordinary, rather than those common to arrest and conviction. For instance,

---

[1]The government notes that some other circuits have ruled that district courts lack jurisdiction to expunge. See United States v. Kotsiris, 543 F. Supp. 2d 966, 969 (N.D. Ill. 2008) (collecting cases). However, I am bound by Seventh Circuit precedent, under which this remedy is available.

it "is possible, even likely, that any person with an arrest or conviction record may well be impeded in finding employment." Id.; see also United States v. Smith, 940 F.2d 395, 396 (9th Cir. 1991) (holding that if employment problems resulting from a criminal record were "sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy").

Flowers provides an example of the uphill climb a defendant seeking expungement faces. The defendant there pointed to her minor role in the offense, her acceptance of responsibility, her lack of any previous criminal history, her remorse and accomplishments since the time of conviction, and her possible loss of employment opportunities in her field. 389 F.3d at 740. The court of appeal found nothing extraordinary about these circumstances and reversed the district court's order of expungement. Id. at 740-41. The court provided as an example of the type of situation where expungement might be warranted a case involving harassment arrests in Selma, Alabama designed to intimidate residents from voting. Id. at 740 (citing United States v. McLeod, 385 F.2d 734 (5th Cir. 1967)).

**B. Analysis**

In the present case, defendant makes three arguments in favor of expungement: (1) her conviction precludes her from working or visiting family and her fiancé in the United States; (2) her lawyer provided ineffective assistance in failing to advise her of the immigration consequences of a plea; and (3) I failed to explicitly consider deportation in sentencing her. I address each argument in turn.

**1. Employment/Family Consequences**

Defendant first contends that as a result of her conviction she cannot obtain employment

4

commensurate with her education and experience. But convicted offenders often experience employment consequences, and defendant's situation seems better than many in her position. The materials attached to defendant's motion show that she has a job, in her field, with a company in Windsor, Ontario. Her inability to travel to the United States to attend seminars and client appointments or, perhaps, get a better job does not make her situation extraordinary.[2] Defendant further contends that her conviction prevents her from visiting family in the United States or marrying her American fiancé. However, nothing prevents defendant's family from traveling from Michigan, where they now reside, to Windsor,[3] or her fiancé from marrying her in Canada. This is not a case where the defendant was deported to some distant, troubled land. Defendant cites no case granting expungement based employment or familial concerns of this nature.

Moreover, as the government notes, the court lacks jurisdiction to order executive branch agencies, such as the Department of Homeland Security ("DHS"), to expunge their records. Janik, 10 F.3d at 472. Defendant provides no reason to believe that expungement of the judicial records of her conviction would make a difference in her immigration situation; DHS could still exclude her based on the records it retains.[4]

---

[2]Defendant attaches to her motion a letter from an immigration lawyer stating that while a federal drug conviction makes a Canadian citizen inadmissible to the United States, an individual may in some circumstances obtain a waiver to temporarily enter for work or visitation. (R. 86-1 at 5.) Defendant does not indicate whether she has sought such a waiver.

[3]Windsor is the southernmost city in Canada, located just a short distance from Detroit, Michigan. See http://en.wikipedia.org/wiki/Windsor,_Ontario.

[4]The parties do not discuss the issue, but it appears that convictions vacated or expunged for rehabilitative or immigration reasons remain valid for purposes of removability, while convictions vacated because of procedural or substantive infirmities do not. See, e.g., Barakat v. Holder, 621 F.3d 398, 403-04 (6th Cir. 2010); Poblete Mendoza v. Holder, 606 F.3d

5

## 2. Ineffective Assistance of Counsel

Defendant next alleges that her lawyer provided ineffective assistance of counsel. To establish such a claim, defendant must show that her attorney's performance was objectively deficient, and that she was prejudiced by the sub-par representation. Strickland v. Washington, 466 U.S. 668, 687 (1984).

In Padilla, the Supreme Court held that counsel performs deficiently if he fails to advise his client that a plea carries a risk of deportation. 130 S. Ct. at 1486. In her motion, defendant claims that her lawyer failed to advise her of the likely immigration consequences flowing from her guilty plea.[5] Defendant argues that while she appears to have a strong argument to withdraw her plea based on Padilla, she is not seeking to set aside her conviction. She instead argues that her ignorance of the immigration consequences constitutes a factor supporting expungement.

Defendant cites no authority for considering ineffective assistance as a factor supporting expungement (as opposed to § 2255 or coram nobis relief); regardless, her claim lacks merit. As indicated above, defense counsel avers that he told defendant that she faced deportation, and that she should consult an immigration lawyer. Upon consulting such a specialist, defendant was advised that the offense was an aggravated felony, and that she faced

---

1137, 1141-42 (9th Cir. 2010); Veiro v. Mukasey, 293 Fed. Appx. 787, 788-89 (2d Cir. 2008); Ali v. Ashcroft, 395 F.3d 722, 728-29 (7th Cir. 2005). Thus, it appears that if I expunged the instant conviction so defendant could avoid its immigration consequences, the executive branch would continue to treat the conviction as valid for purposes of admissibility. I make no ruling in this regard, and I do not in any way discourage defendant from seeking whatever relief may be available to her in other forums; as the government notes, questions of waiver or re-admission are outside the scope of these proceedings.

[5]Defendant files no sworn affidavit supporting this claim. In the unsworn letter attached to the initial motion, she makes no allegation that she did not know she would be removed.

immediate removal on conviction.

Defendant does not in her reply deny receiving this information. Nor does it appear she could, for it is reiterated in her own e-mail. Instead, in her reply brief she takes a somewhat different position, stating that she "clearly was aware that there would be immigration consequences. However, she did not realize that she would be barred permanently from living in the United States, visiting her family, working in the United States and seeking and obtaining a higher standard of employment in Canada." (R. 90 at 3.) In another unsworn letter attached to the reply brief, defendant states that although she understood that there was a chance she would be required to leave the United States, she did not imagine the life-long immigration consequences that would follow. She states that she believed that following removal she could re-apply for admission, but after returning to Canada she was told that she had to wait for twenty years post-conviction, and even then she had no assurance of approval. (R. 90-1 at 1; see also R. 90 at 8.) The reply submission thus suggests that, while defendant knew she would have to leave the United States after sentencing, she believed she could promptly reapply for admission. This makes little sense, particularly in light of the e-mail attached to defense counsel's affidavit, in which defendant stated that the crime charged would bar her from returning to the U.S. (R. 88-1 at 4.) More importantly, defendant makes no claim that defense counsel or her immigration lawyer misled her as to the possibility or timing of re-admission.

In any event, even if defense counsel did fail to advise her of removal, as defendant alleges in the initial motion, her ineffective assistance claim would fail. The Seventh Circuit has held that Padilla, a 2010 decision, announced a new rule of criminal procedure inapplicable on collateral review. Chaidez v. United States, No. 10-3623, 2011 WL 3705173 (7th Cir. Aug. 23,

7

2011). In 2008, when defendant entered her plea, the law in this (and most other) circuits was that counsel had no duty to inform an accused of the likely deportation consequences arising out of a guilty plea. See, e.g., Santos v. Kolb, 880 F.2d 941, 944 (7th Cir. 1989); United States v. George, 869 F.2d 333, 337 (7th Cir. 1989); United States v. Shihadeh, No. 03-CR-46, 2007 WL 325797, at *3 (E.D. Wis. Jan. 31, 2007). Defendant makes no claim of deficient performance under pre-Padilla law.

Nor does she make any attempt to show prejudice, i.e., a reasonable probability that she would not have pled guilty absent her attorney's allegedly deficient advice. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). As defense counsel indicates in his affidavit, their primary goal was to avoid prison, a distinct possibility given the nature of the offense. Agents arrested defendant with 49,693 ecstasy tablets, which converts to 6211 kg of marijuana under U.S.S.G. § 2D1.1(c) cmt. n.10 & 11, producing a base offense level of 34 under § 2D1.1(c)(3). The evidence against defendant was strong: agents caught her red-handed with the pills, and she confessed in a Mirandized, post-arrest statement. Absent the further reductions for safety valve, minor role, and acceptance of responsibility she obtained pursuant to her plea agreement, she faced a guideline imprisonment range of 151-188 months upon conviction; with these reductions, the range dropped to 41-51 months. See Fathalla, 2008 WL 4501057, at *1. Counsel's assistance in facilitating defendant's cooperation resulted in a further reduction to 21-27 months. Id. at *2. Ultimately, I sentenced defendant to probation, a highly unlikely outcome had defendant elected to take the case to trial.

Defendant makes no claim that, even if counsel had told her that she would be forever barred from the United States following a plea, she would have spurned the plea agreement and taken the case to trial. Even now, she disavows any intent to withdraw her plea. In the

8

unsworn letter attached to her reply brief, defendant states that the "chance of completing a prison sentence occupied my mind and guided my decisions at the time of the plea agreement." (R. 90-1 at 1.) Defendant cannot enjoy the advantages of her plea (staying out of prison) while avoiding the detriments (removal from the United States).

### 3. Sentencing Consideration

Finally, defendant notes that I did not explicitly consider deportation in imposing sentence under 18 U.S.C. § 3553(a). She then proceeds through a discussion of post-conviction law (R. 86 at 22-24), which appears to be drawn nearly verbatim from my decision in Shihadeh, 2007 WL 325797, at *1-2. She concludes by again stating that while she may be entitled to re-sentencing and/or coram nobis relief, she seeks neither; rather, she asks that I now consider immigration consequences in ordering expungement. However, she cites no authority supporting her position, and her claim in this regard lacks merit.

The district court can consider the fact of deportation in imposing a lesser sentence, see, e.g., United States v. Barba-Herrera, No. 10-CR-244, 2011 WL 3903235, at *4 (E.D. Wis. Sept. 6, 2011) (citing United States v. Villanueva, No. 07-CR-149, 2007 WL 4410378, at *4 (E.D. Wis. Dec. 14, 2007); United States v. Ferreria, 239 F. Supp. 2d 849, 855-58 (E.D. Wis. 2002)), but it lacks authority to stop the removal.[6] Yet that is basically what defendant seeks now, an order that will permit her to return to the United States.[7] She received a lenient sentence, well below the guidelines, based on her cooperation and other mitigating factors. Defendant fails

---

[6] Years ago, courts could make judicial recommendations against deportation – called "JRADs" – but no longer. See United States v. Bodre, 948 F.2d 28, 30 (1st Cir. 1991).

[7] As discussed above, it is unclear whether an order of expungement could facilitate re-admission.

9

to demonstrate the appropriateness of the further, extraordinary relief of expungement.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion for expungement (R. 86) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2011.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge